## United States District Court
## District of Maine

Jane Doe, as mother and next
friend of her son, minor Jack Doe

Jane Doe,
individually,

and the Maine Human Rights
Commission, solely as to Count 3
under the Maine Human Rights Act

          Plaintiffs,

v.

Brunswick School Department, Town
of Brunswick, Maine

and

Walter Wallace,

          Defendants.

Civil No.

## Complaint and Demand For Jury Trial;
## Injunctive Relief Sought

Jane Doe files this action under federal and state civil rights laws on

behalf of herself and her son Jack Doe (also referred to as "her child" or "the

child"). This complaint uses pseudonyms for the name of the Plaintiff and her

minor son to protect him from additional stigmatization and trauma. Her son

was age 11 when the severe abuse of him at school began and his educational

environment became hostile. Her claims are against the Brunswick School Department, Town of Brunswick ("Brunswick") and the Principal of Brunswick Junior High School, Walter Wallace. The Maine Human Rights Commission joins this action as a Plaintiff solely regarding the claims filed under the Maine Human Rights Act against Brunswick. The Commission joins this action for the use of Jane Doe and her child and to ensure that Brunswick has in place effective measures to prevent a hostile education environment based on sex and sexual orientation.

## Summary of the Action

1.      The Maine Human Rights Commission conducted a careful and thorough preliminary investigation, including a Fact Finding Conference, and determined that there are reasonable grounds to believe that the Brunswick School Department committed unlawful discrimination against Jack Doe for two and a half years. This illegal discrimination began while he was in sixth grade and continued through the beginning of eighth grade in October 2012. Jack Doe was subjected to chronic, severe, pervasive, and objectively offensive verbal and physical harassment and abuse – including three separate incidents of sexual assaults – due to his sex and perceived sexual orientation. The Brunswick School Department's response to the longtime and escalating harassment and abuse by numerous male students was

clearly unreasonable in light of the continuing acts of harassment and abuse and other circumstances known to the School. (The sexual assaults were part of the charges file with the Commission but it did not investigate them because they were not necessary to its finding.)

2.      The Principal of the Brunswick Junior High School, Walter Wallace, failed to uphold his number one job of keeping safe from harm the students entrusted to his care. Instead, he was deliberately indifferent to the harassment and abuse of Jack Doe (and other males students in that same class) by a group of sexually aggressive and violent male students.

3.      About once a week throughout his sixth and seventh grades, the child went directly to Wallace in his office and complained about numerous acts of severe verbal and physical harassment by other male students because of his sex or perceived sexual orientation and explained to Wallace that this harassment made him feel very unsafe and anxious, including being (1) touched on the shoulder and made fun of for being gay over 30 different times; (2) threatened with sexual assault by statements like "I want to mate with you" and "I've been licking this cheese thinking about you all night;" (3) stabbed with a pencil and a pushpin and hit with a lacrosse stick. But, Wallace failed to take this long-continuing and escalating male-on-male harassment seriously and instead treated it as normal behavior between boys in middle school.

4.     Wallace acted with deliberate indifference because he believes that complaints of sexual harassment by male children regarding male harassers are much less serious than complaints of sexual harassment by female students regarding male harassers. As he said to Jane Doe, "boys will be boys." The Commission's Investigator's Report states at § IV(4)(b) that Wallace admitted at the Commission's Fact Finding Conference that (1) when female students complained about derogatory sexual comments by male students, such  complaints were looked at and treated on a higher level than the complaints by Jane Doe and her son about the harassment and abuse of him by other boys; and (2) this "higher level" of treatment would involve a meeting with the Principal or the Assistant Principal and also a meeting with the parents and could involve a suspension; and (3) Wallace "did not believe that any complaints" that he dealt with regarding Jack Doe "rose to this level."

5.     Wallace also acted with deliberate indifference to the complaints of at least two other male classmates of Jack Doe who complained about severe abuse by other male students:  The mother of  another student in Jack Doe's sixth grade class complained about unwelcome sexual comments and advances against her son by other boys in the boys' bathroom; Wallace failed to take any corrective action and that boy became afraid to use the bathroom and refused to return to Brunswick Junior High for seventh grade because of

the male-on-male bullying. During the beginning of Jack Doe's seventh grade year, one of the abusers of Jack Doe also attacked and beat up another male student during a football game at the Brunswick High School. Wallace told a complaining parent that there was nothing he could do about it because the attack did not occur on Brunswick Junior High property, even though the attack did occur on Brunswick school property. This other male victim also became afraid to use the boys' bathroom at Brunswick Junior High because of the abuse there by these male harassers.  Wallace condoned  the harassment and abuse of Jack Doe by instructing two of his female classmates to stay away from him because he was "weird."

6.    Jane Doe seeks relief based on two federal civil rights claims:  (1) against Brunswick and Wallace under 42 U.S.C. § 1983 for unconstitutional sex and sexual orientation discrimination and free speech retaliation; and (2) against Brunswick under Title IX of the Education Amendments of 1972, *20 U.S.C.  § 1681 et seq.* for sex discrimination and for complaining about sex discrimination.  In addition, Jane Doe and the Maine Human Rights Commission jointly seek relief  under the Maine Human Rights Act, 5 M.R.S. § 4571 *et seq.,* against Brunswick for sex and sexual orientation discrimination.

## Parties

7.    During the events at issue in this complaint, Plaintiff Jane Doe and her child Jack Doe were residents of the Town of Brunswick, County of Cumberland, and State of Maine.

8.    Plaintiff Maine Human Rights Commission (the "Commission") is a quasi-independent Commission empowered by the MHRA, 5 M.R.S.A. §4612, to file civil actions in its name for the use of victims of alleged discrimination seeking appropriate relief and to seek relief in the public interest.

9.    The Brunswick School Department is a department of the Town of Brunswick, Maine, which is a municipal governmental entity organized and existing under the laws of the State of Maine.

10.    Defendant Walter Wallace is an employee of the Town of Brunswick, County of Cumberland, and State of Maine. He is being sued in his personal and individual capacity, as well as in his official capacity.

## Facts

11.    In August 2010, Jack Doe started his sixth grade school year at Brunswick Junior High School. Jack Doe was 11 years old.

12.    During the 2010 to 2011 school year, a group of four or more male students performed the "gay test" on Jack Doe over thirty times. The

students would put their hand on Jack Doe's shoulder for ten seconds and if he did not notice, they would call him "gay."

13. Several male students also performed another "gay test" on Jack Doe. This "gay test" was called the "fire truck" game. Male students would slide their hand down Jack Doe's forearm and when Jack Doe told them to stop they would say fire trucks do not stop at red lights.

14. Jack Doe reported to at least three of his teachers that male students were performing the gay test on him and in response the teachers asked him if he was gay. When he told them he was not, one of his teachers told him not to worry about it.

15. Jack Doe and Jane Doe then told Principal Walter Wallace about the "gay test" and he responded, "[n]ot that again."

16. In about January 2011, Wallace told Jack Doe and Jane Doe that he would contact the offending four students' parents regarding their children's harassing behavior. But, he only spoke to one of the four students' parents.

17. During his seventh grade year, between September 2011 and June 2012, Jack Doe met more than once with Wallace and reported that the gay test harassment was continuing.

18. In January of 2011, a male student told Jack Doe in science class, "I want to mate with you."

19.   Jack Doe told his science teacher and Wallace about that harassing comment.

20.   During the 2010 to 2011 school year, a group of male students, including the same student who made the "I want to mate with you" statement, frequently cornered, taunted, and stared at Jack Doe when he was at his locker.

21.   When Jack Doe told two of his teachers about this harassment, they advised him "suck it up." Jack Doe then went directly to Wallace for help. The only corrective action he offered was the obviously useless option of taking a locker in a different area.

22.   After Jack Doe reported the severe harassment near his locker to Wallace, the same type of harassment continued to happen.

23.   In Jack Doe's sixth grade French class, a male student held up a piece of cheese and told Jack Doe "I've been licking this cheese thinking about you all night."  This class involved a potluck of French foods.

24.   The French teacher separated the students but took no further corrective action known to Jane Doe or her child.

25.   During the 2010 to 2011 school year, the mother of another sixth grade boy reported to Wallace that her son was afraid to use the bathroom because other male students were threatening him with gay sex when he was in the bathroom. Wallace promised to take corrective action but he failed to

8

do so. As a result, that boy stopped using the bathroom at school during sixth grade and refused to return to Brunswick Junior High School for seventh grade.

26.     During sixth grade, the Northwest Evaluation Assessment test scores for Jack Doe dropped about ten points from his previous scores.

27.     During her son's sixth grade year, Jane Doe repeatedly complained to Wallace about the continuing harassment and abuse of her child. More than once, Wallace said to her words to the effect that "boys will be boys."

28.     In light of Wallace's personal knowledge of the chronic harassment and abuse that was continuing against Jack Doe throughout his sixth grade, by June 2011 Wallace should have at least taken some basic steps to protect her child from future harassment and abuse.

29.     Wallace should have at least: 1) treated the complaints of harassment against Jack Doe at the same level of response that he accorded complaints that female students were being harassed with derogatory sexual comments by male student; 2)  met with the parents of all children that Jane Doe or her son reported as harassing him; 3) reported the harassment to the school resource police officer and 4) required and monitored a schoolwide reporting expectation for verbal and physical aggression against Jack Doe so that all staff knew they were required to report all peer-to-peer aggressive

behavior targeting this child to Wallace or one other central person such as the assistant principal. These corrective actions would have made possible the consistent and proportionate administration of consequences reasonably designed to stop the harassment and abuse.

30.    Wallace should also have made the consequences progressively more serious for students who repeated acts of harassment against Jack Doe.

31.    Wallace should also have required and attended regularly scheduled meetings of all staff members involved in this child's classes to ensure a common awareness of the bullying and the plan in place to stop it.

32.    Instead, Wallace failed to respond, responded only after a lengthy and unjustified delay, and responded in a manner that amounted to deliberate indifference to the harassment and abuse of Jack Doe.

33.    The responses of Wallace and the Brunswick School Department were not reasonably calculated to end the harassment of Jack Doe.

34.    Because Wallace and the Brunswick School Department had actual knowledge that their efforts to stop the harassment and abuse of Jack Doe were ineffective, and they continued to use those same methods to no avail, they failed to act reasonably in light of the known circumstances.

35.    In the late summer of 2011, Jack Doe began his seventh grade school year at Brunswick Junior High School.

36.     During seventh grade, a male student stabbed Jack Doe with a pencil in class. The pencil penetrated the skin and left a permanent mark. Jack Doe immediately reported this assault to the teacher of that class. This assault was witnessed by several other students sitting at the same table as Jack Doe. That same day Jack Doe reported this assault to Wallace and his mother complained about the assault to Wallace soon after it happened.

37.     In the fall of 2011, one of these same bullies who targeted Jack Doe, attacked and beat up another male seventh grade student during a football game at the Brunswick High School. When that child's parent complained to Wallace, he told the parent that there was nothing he or the school could do about it because the attack did not occur on Brunswick Junior High property.

38.     This male child became afraid to use the boys' bathroom at the Brunswick Junior High School because of the abuse and harassment by other boys, including the same boys who harassed and abused Jack Doe. This male child also wound up missing about 70 days of school in seventh grade because of the harassment and abuse by many of the same boys who harassed and abused Jack Doe.

39.     In about the fall of 2011, Wallace  condoned the harassment and abuse of Jack Doe by instructing two of his female classmates to stay away from him because he was "weird."

40.     During seventh grade, a male student was attacked by other seventh grade boys in the bathroom and was visibly bleeding from the head when he returned to the classroom. This boy was harassed and abused by the same boys who harassed and abused Jack Doe.

41.     During seventh grade, Jack Doe was repeatedly taunted by other male students for having "man-boobs." Jack Doe reported this harassment to a teacher and repeatedly reported this harassment directly to Wallace.

42.     In about late September of 2011, two male students attempted to crawl under the door into a bathroom stall that Jack Doe was using in the gym locker room.

43.     When the gym teacher came into the locker room the two male students temporarily stopped their harassment of Jack Doe.

44.     Later, in about mid-November of 2011, two male students followed Jack Doe into a bathroom at Brunswick Junior High School.

45.     One of those male students put a knife to the underside of Jack Doe's wrist and threatened to cut it open unless Jack Doe took his pants off and got on the ground.

46.     Jack Doe refused to comply with this demand.

47.     The two male students began kicking Jack Doe's shins and they forced him to the ground in the bathroom stall.

12

48.     The two male students sexually assaulted Jack Doe, including by sodomizing him and ejaculating in his rectum.

49.     At the end of that sexual assault, one of the two assailants said that he would burn Jack Doe's house down and cut the arms of his family members and pets if Jack Doe ever told anyone what had happened.

50.     One of the assailants then cut about a 1 ½ inch slice between Jack Doe's elbow and wrist. This attack with the knife caused a permanent scar.

51.     Because of this violence and threats of worse violence, Jack Doe did not report this sexual assault to his mother or anyone else until October 2012.

52.     Soon after this sexual assault in November 2011, Jane Doe contacted the school because she noticed that her son was stressed out and emotionally shutting down.

53.     In December 2011, male students cornered Jack Doe in a hallway.

54.     Jack Doe reported this harassment the same day directly to Wallace.

55.     On December 12, 2011, two male students told Jack Doe "I love you."

56.    Jack Doe reported this incident of harassment to two of his teachers and to Wallace.

57.    In about February 2012, Jack Doe was changing his clothes before gym class in a bathroom stall in the boys' locker room.

58.    Two male students followed Jack Doe into the bathroom.

59.    One of the male students made sure no other students were in the bathroom with them.

60.    One of the male students sexually assaulted Jack Doe, including by sodomizing him.

61.    In about April 2012, three boys forced Jack Doe into the seventh grade boys' bathroom where they sexually assaulted him, including by sodomizing him.  This happened on a day when there was a power outage at the school.

62.    In May 2012, Jack Doe was getting a drink from a water fountain in a hallway when a male student walked up to him and began stroking his back and shoulder. Jack Doe immediately reported this unwanted touching directly to Wallace.

63.    Wallace reported that he spoke to the student who said that he did not mean anything by touching Jack Doe.

64.    In May of 2012, two male students hit Jack Doe, including on his head, with lacrosse sticks as they walked down the halls of Brunswick Junior High School.

65.    Almost immediately after this attack, Jack Doe reported it to Wallace in his office. One of these students admitted to hitting Jack Doe.

66.    This was the first time the school resource officer (with the Brunswick Police Department) was notified by Wallace or the School of the reports dating back about 18 months that Jack Doe was being frequently and severely harassed and assaulted at Brunswick Junior High School.

67.    In about late May 2012, a student poked Jack Doe with a pushpin saying he did so to see if Jack Doe would deflate.

68.    Jack Doe reported this assault right away to his teacher and within about 30 minutes reported it to Wallace. Jack Doe's father met with Principal Wallace regarding this incident. During this meeting, Wallace said admitted that he would have called the police if he had been poked with a pushpin but that he did not call the police when that happened to Jack Doe.

69.    In about early June 2012, Jack Doe refused to return to Brunswick Junior High School because of the continuing harassment and abuse. Jane Doe emailed the Director and Coordinator of Prevention of Bullying with the State of Maine about Jack Doe's refusal to attend school and asked about his missing assignments.

15

70.    On June 6, 2012, a meeting was held with the parents of Jack Doe to create, for the first time, a safety plan for Jack Doe so that he could finish out the school year. Brunswick Junior High School proposed  a plan that involved assigning Jack Doe an adult escort to accompany him between classes or requiring Jack Doe to stay late in class or leave early to avoid the hallways filled with students in between classes. The plan also had required Jack Doe to eat lunch in the teacher's classroom and to use a private bathroom.

71.    This safety plan made Jack Doe feel even less safe because it would further stigmatize him and draw even more attention to him and his isolation, making him even more of a target for harassment and abuse.

72.    On June 11, 2012 two eighth-grade boys called Jack Doe a "douche bag" while he was in the hallway taking a makeup math test. As soon as he completed the test, Jack Doe reported this harassment to his teacher. On that same day, he reported this harassment to Wallace.

73.    Due to the frequent and severe harassment and abuse, Jack Doe missed many days of school at the beginning of eighth grade.

74.    On about October 12, 2012, Jane Doe received an email from Wallace notifying her that a male student had sat on Jack Doe's lap. The email explained that "peer-to-peer" consequences were implemented in response to bullying behavior since it affected Jack Doe's school attendance.

16

75.     On about October 24, 2012, Jane Doe told her child that they were going to meet with Brunswick Junior High School staff to discuss ongoing bullying. Jack Doe refused to attend the meeting.

76.     Jane Doe attended the meeting on about October 24 without her son but was told by the School that her son needed to attend the meeting. When she returned home to tell her son that he needed to attend a meeting the next day at school, he had a panic attack. He then told his mother for the first time about the three sexual assaults of him by other students in 2011 and 2012.

77.     Jack Doe has not attended Brunswick Junior High School since October 24, 2012 due to his fear of being unsafe there.

78.     On about October 25, 2012, Jane Doe reported the three sexual assaults of her child to Brunswick Junior High School.

79.     On November 2, 2012, Jane Doe took her child to Spurwink Child Abuse Program for an evaluation. The written Spurwink evaluation documents the child's disclosure of the sexual assaults to Jane Doe and the school resource  officer who interviewed him. The Spurwink evaluation documents the consistency of Jack Doe's reporting of the assaults each time he was asked about them.

80.     The Spurwink evaluation concludes that "there is strong evidence that [Jack Doe] has been sexually abused" as he reported to the school resource   officer.

81.     The Spurwink evaluation also included a medical examination. The doctor noted a lesion on Jack Doe's arm that was consistent with the child's description of the November 2011 sexual assault that included a male student cutting the child's arm with a knife.

82.     Jack Doe was diagnosed by Spurwink with depression and post-traumatic stress disorder as a result of the sexual assaults and other abuse and harassment he suffered at the Brunswick Junior High School. The Spurwink aftercare referral indicated that Jack Doe should not return to Brunswick Junior High School where the sexual assaults occurred.

83.     While Jack Doe was a student at Brunswick Junior High School, his grades and attendance dropped significantly. This deterioration in his educational performance was caused by the abusive and hostile education environment.

84.     On July 30, 2012, Jane Doe filed a complaint with the Commission against Brunswick for the discrimination and retaliation against her child. This complaint was identified by the Commission with its case number ED/PA12-0363.

85.     Jane Doe filed an amended complaint with the Commission on December 24, 2012, adding the allegations regarding the three  sexual assaults.

86.     These complaints alleged unlawful harassment in an educational setting based on sex and perceived sexual orientation, as well as retaliation for reporting this harassment.

87.     The Commission conducted a careful and thorough preliminary investigation of the complaint, including an in-depth review of the written materials provided by the parties, an in-person interview of Jane Doe and her child, and an in-person fact-finding conference at which Principal Walter Wallace spoke about the charges made by Jane Doe and her child, and an in-person argument before the Commission.

88.     The Commission's Investigator's Report at § V(7)(g) concluded that "[d]ue to the number of incidents that occurred specifically to [Jack Doe], it is sensible to think that [the Brunswick School Department] should have honed in on that fact to see if there was a bigger issue instead of handling each incident on a case by case basis for more than two and a half years."

89.     The Commission's Investigator's Report at § V(7)(g)(iii) also concluded that "[b]y failing to look at the overall picture of what was happening to [Jack Doe, the School] allowed a hostile education

environment to persist for a lengthy period of time" and that the School's response was not appropriate "when it became clear that the case-by-case approach was not effective to stop the harassment."

90.     During the Commission's investigation, Brunswick further demonstrated its continuing deliberate indifference to the sexual harassment and abuse of Jack Doe. For example, Brunswick contended in writing to the Commission that "being teased for having 'Man boobs'" and being "called a 'douche bag'" could not "reasonably be viewed as relating to any type of protected status" or unlawful harassment of a middle school male student.

91.     In other words, even when defending itself at the Commission, Brunswick continued to deny the factual and legal reality of male-on-male sexual harassment and abuse.

92.     The Commission determined that there are reasonable grounds to believe that the Brunswick School Department committed unlawful discrimination against Jack Doe for two and a half years. This determination was set forth in a July 16, 2014 written statement of finding.

93.     On October 14, 2014, the Commission issued a written notice of failed conciliation. This notice stated that the efforts of the parties to resolve the matter "have concluded without success."

94.     Under 5 M.R.S.A. § 4622, Jane Doe has satisfied one or more of the prerequisites to be awarded attorneys' fees and all available damages under the Maine Human Rights Act.

95.     Jane Doe and the Commission have exhausted all administrative remedies for all claims in this action that require administrative exhaustion. On Monday, January 12, 2015 Brunswick agreed to toll the court filing deadlines for Jane Doe and the Commission and that agreement was later terminated by Brunswick effective July 7, 2015.

96.     The Brunswick School Department received substantial Federal financial assistance from the federal government throughout the time that Jack Doe attended the Brunswick Junior High School.

97.     Defendant Wallace acted with actual malice and reckless indifference to the federally protected civil rights of Jane Doe and her child.

## Legal Claims

## Count I

### (Against Brunswick and Wallace Based on Equal Protection and First Amendment Rights: 42 U.S.C §1983)

98.     The allegations in paragraphs 1 - 97 are repeated. Wallace was the final policymaker for the Brunswick School Department regarding the policies applied to Jack Doe at issue in this case.

99.    Based on these allegations, Defendants, while acting under color of state law, violated the constitutional rights of Jack Doe and Jane Doe, including the right to be free of discrimination based on sex or sexual orientation and the right to report unlawful discrimination without retaliation.  Defendants violated both Jane Doe's individual constitutional rights and those constitutional rights derived from her standing as the mother of her child to assert the interests of her minor child.

100.   As a result of Defendants' unconstitutional conduct, Jack Doe and Jane Doe have suffered and are continuing to suffer personal injuries, including but not limited to, emotional pain and distress, suffering, inconvenience, mental anguish, loss of enjoyment of life, injury to reputation, chilling of constitutional and free speech rights, and other pecuniary and non-pecuniary losses.

101.   Jane Doe prays for the following relief:

(a) Enter declaratory relief that Defendants, while acting under color of state law, violated the constitutional rights of Jane Doe and her child;

(b) Enter injunctive relief ordering Defendants to implement effective training and monitoring policies and practices to comply with its obligation to protect the students in their charge from a hostile educational environment based on sex or sexual orientation, including its obligations to promptly and appropriately investigate or otherwise respond to allegations

22

of sexual harassment and to apply a preponderance of evidence standard of proof for such investigations and not rely on police investigations, with the further requirement that the Commission review and approve these policies and practices for the next five years; this compliance plan must include (i) dissemination of the revised policies to all members of the Brunswick School Department community, including all students and parents; (ii) ensure that each school location has a non-discrimination compliance officer who is notified of every complaint of harassment and documents the action taken; (iii) require mandatory training for all employees every year; (iv) designate an on-call counselor to assist victims of harassment or sexual violence during school hours;  (v) review Brunswick police records for the past five years for any complaint of sexual assault that was treated exclusively as a criminal matter; (vi) track and report to the Commission at the end of the next academic year about all harassment complaints received and investigated; and (vii) conduct periodic "climate checks" with enrolled students to assess the effectiveness of Brunswick's efforts to maintain an environment free of sexual harassment and violence;

   (c) Award compensatory damages in amounts to be determined at trial and prejudgment interest thereon;

   (d) Award punitive damages in amounts to be determined at trial and prejudgment interest thereon;

(e) Award plaintiff her full costs, including reasonable attorney's fees and expert fees; and

(f) Award such further relief as deemed appropriate.

## Count II

### (Against Brunswick only based on Title IX; *20 U.S.C. § 1681 et seq.*)

102.  The allegations in paragraphs 1 - 101 are repeated.

103.  Based on these allegations, the Brunswick School Department violated the Title IX rights of Jane Doe and her child, including the rights to be free of discrimination based on sex and to report such unlawful discrimination without retaliation. Brunswick violated both Jane Doe's individual Title IX statutory rights and those statutory rights derived from her standing as the mother of her child to assert the interests of her minor child. This discrimination was willful, deliberate, and intentional. Brunswick knew of the harassment and was deliberately indifferent to it.

104.  As a result of Defendants' unlawful conduct, Jack Doe and Jane Doe have suffered and are continuing to suffer personal injuries, including but not limited to, emotional pain and distress, suffering, inconvenience, mental anguish, loss of enjoyment of life, injury to reputation, chilling of statutory free speech rights, and other pecuniary and non-pecuniary losses.

105.  Jane Doe prays for the following relief:

(a) Enter declaratory relief that Brunswick violated the Title IX rights of Jane Doe and her child;

(b) Enter injunctive relief ordering Brunswick to implement effective training, enforcement, and monitoring policies and practices to comply with its Title IX obligation to protect the students in its charge from a hostile educational environment based on sex, including its obligations to appropriately investigate or otherwise respond to allegations of sexual harassment and to apply a preponderance of evidence standard of proof for such investigations and not rely on police investigations, with the further requirement that the Commission review and approve these policies and practices for the next five years; this compliance plan must include (i) dissemination of the revised policies to all members of the Brunswick School Department community, including all students and parents; (ii) ensure that each school location has a non-discrimination compliance officer who is notified of every complaint of harassment and documents the action taken; (iii) require mandatory training for all employees every year; (iv) designate an on-call counselor to assist victims of harassment or sexual violence during school hours; (v) review Brunswick police records for the past five years for any complaint of sexual assault that was treated exclusively as a criminal matter; (vi) track and report to the Commission at the end of the next academic year about all harassment complaints

received and investigated; and (vii) conduct periodic "climate checks" with enrolled students to assess the effectiveness of Brunswick's efforts to maintain an environment free of sexual harassment and violence;

(c) Award compensatory damages in amounts to be determined at trial and prejudgment interest thereon;

(d) Award plaintiff her full costs, including reasonable attorney's fees and expert fees; and

(e) Award such further relief as deemed appropriate.

## Count III

## (Against Brunswick solely based on the Maine Human Rights Act)

106.   Plaintiffs repeat the allegations in paragraphs 1- 105.

107.   Based on these allegations, the Brunswick School Department violated the MHRA by, on the basis of the sex and perceived sexual orientation of Jack Doe, excluding him from participation in the Brunswick Junior High School; denying him the benefits of the Brunswick Junior High School; and subjecting him to discrimination as a student at the Brunswick Junior High.

108.   The Brunswick School Department violated the MHRA by creating a hostile education environment for Jack Doe.

109.   The Brunswick School Department knew or should have known of the harassment and failed to implement prompt and appropriate corrective action.

110.   As a result of Brunswick's conduct, Jane Doe and her child have suffered and are continuing to suffer personal injuries, emotional pain and distress, suffering, inconvenience, mental anguish, loss of enjoyment of life, injury to reputation, and other pecuniary and non-pecuniary losses.

111.   Plaintiffs Jane Doe and the Commission jointly request relief as follows:

(a)      Enter declaratory relief that the Brunswick School Department has engaged in unlawful discrimination on the basis of sex and sexual orientation in violation of the MHRA;

(b)      Enter injunctive relief ordering Brunswick to implement effective training, enforcement, and monitoring policies and practices to comply with its obligation to protect the students in its charge from a hostile educational environment based on sex or sexual orientation, including its obligations to appropriately investigate or otherwise respond to allegations of sexual harassment and to apply a preponderance of evidence standard of proof for such investigations and not rely on police investigations, with the further requirement that the Commission review and approve these policies and practices for the next five years; this compliance plan must include (i)

dissemination of the revised policies to all members of the Brunswick School Department community, including all students and parents; (ii) ensure that each school location has a non-discrimination compliance officer who is notified of every complaint of harassment and documents the action taken; (iii) require mandatory training for all employees every year; (iv) designate an on-call counselor to assist victims of harassment or sexual violence during school hours;  (v) review Brunswick police records for the past five years for any complaint of sexual assault that was treated exclusively as a criminal matter; (vi) track and report to the Commission at the end of the next academic year about all harassment complaints received and investigated; and (vii) conduct periodic "climate checks" with enrolled students to assess the effectiveness of Brunswick's efforts to maintain an environment free of sexual harassment and violence;

(c)     Enter an order for the Brunswick School Department to cease and desist from these unlawful practices as specified in the order;

(d)     Enter an order to continue the court's jurisdiction until the violator has demonstrated compliance;

(e)     Enter an order to pay to both Jane Doe and the Commission civil penal damages of $20,000;

(f)      Award Jane Doe compensatory damages in amounts to be determined at trial by the jury and prejudgment interest thereon;

28

(g)     Award Jane Doe her full costs, including reasonable attorney's

fees and expert fees; and

(h)     Award such further relief as deemed appropriate.


Date: July 7, 2015                    /s/ David G. Webbert
                                      David G. Webbert, Esq.
                                      **Johnson, Webbert & Young, LLP**
                                      160 Capitol Street, P.O. Box 79
                                      Augusta, Maine  04332-0079
                                      Tel:  (207) 623-5110
                                      dwebbert@johnsonwebbert.com

                                      /s/ Gary Goldberg
                                      Gary Goldberg, Esq.
                                      **Terry Garmey & Associates**
                                      482 Congress Street, Suite 402 |
                                      Portland, ME  04101-3424
                                      ggoldberg@garmeylaw.com

                                      /s/ Christopher A. Harmon
                                      Christopher A. Harmon, Esq.
                                      **Terry Garmey & Associates**
                                      482 Congress Street, Suite 402 |
                                      Portland, ME  04101-3424
                                      charmon@garmeylaw.com

                                      /s/ Courtney I. Beer
                                      Courtney I. Beer, Esq.
                                      **Pine Tree Legal Assistance, Inc.**
                                      88 Federal Street, P.O. Box 547,
                                      Portland ME 04112
                                      cbeer@ptla.org

                                      *Attorneys for Jane Doe*

/s/ Barbara Archer Hirsch
Barbara Archer Hirsch, Esq.
Commission Counsel
**Maine Human Rights Commission**
51 State House Station
Augusta, Maine 04333-0051
Barbara.ArcherHirsch@mhrc.maine.gov

*Attorney for the Commission*