UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| JANE DOE and MAINE HUMAN RIGHTS COMMISISON,  )<br>  )<br>        Plaintiffs  )<br>v.  )<br>  )<br>BRUNSWICK SCHOOL DEPARTMENT,  )<br>et al.,  )<br>  )<br>        Defendants  ) | No. 2:15-cv-257-DBH |

*MEMORANDUM DECISION AND ORDER ON DISCOVERY DISPUTE*

In this civil rights action, the parties have filed simultaneous letter briefs and responses in accordance with the terms of my Report of Hearing and Order Re: Scheduling (ECF No. 17) addressing the defendants' request for production of the records of two therapists who have treated the plaintiff's minor son, who is the victim of the alleged discrimination that gives rise to this lawsuit. Treating the discovery dispute as a motion by the defendants to compel production of the requested records, I deny the motion, but only upon certain specific conditions.

## I.    Applicable Legal Standards

Rule 26(b) of the Federal Rules of Civil Procedure outlines the general scope of permissible discovery in a civil action.

> Unless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

1

Fed. R. Civ. P. 26(b)(1).

"[A] party resisting discovery has the burden of showing some sufficient reason why discovery should not be allowed[.]" *Flag Fables, Inc. v. Jean Ann's Country Flags & Crafts, Inc.*, 730 F. Supp. 1165, 1186 D. Mass. 1989) (citation and internal quotation marks omitted). In addition, the proponent of a privilege bears the burden of demonstrating entitlement to its protection. *See, e.g., In re Keeper of Records (Grand Jury Subpoena Addressed to XYZ Corp.)*, 348 F.3d 16, 22 (1st Cir. 2003) ("Despite a grand jury's vaunted right to every man's evidence, it must, nevertheless, respect a valid claim of privilege. But the party who invokes the privilege bears the burden of establishing that it applies to the communications at issue and that it has not been waived.") (citations omitted).

## II. Factual Background

The detailed complaint herein alleges, *inter alia*, the following:

1. While he was in the sixth and seventh grades, the plaintiff's son complained to the principal of his Brunswick school that he had been verbally and physically harassed by other male students because of his perceived sexual orientation. Complaint and Demand for Jury Trial; Injunctive Relief Sought ("Complaint") (ECF No. 1) ¶ 4.

2. The principal did not take this harassment seriously. *Id.*

3. When female students complained about derogatory sexual comments by male students, their complaints were treated on a higher level than were complaints by the plaintiff and her son. The "higher level" involved meeting with the alleged harassers and with their parents and could involve a suspension. *Id.* ¶ 4.

4. The plaintiff's son reported to at least three of his teachers that male students were performing "the gay test" on him and would call him gay. *Id.* ¶ 14. The principal told the plaintiff

that he would contact the parents of the four students who were performing the "test" on her son, but he only spoke to the parents of one of these students. *Id.* ¶ 16.

5. During the 2010 to 2011 school year a group of male students frequently taunted the plaintiff's son when he was at his locker. *Id*. ¶ 20. When the victim told two of his teachers about this harassment, they told him to "suck it up." *Id*. ¶ 21. When he went to the principal, he was only offered the option of moving to another locker. *Id*.

6. The plaintiff repeatedly complained to the principal during her son's sixth grade year about harassment and abuse of her son and was told, in effect, that "boys will be boys." *Id*. ¶ 27.

7. During the seventh grade, a male student stabbed the plaintiff's son with a pencil in class. He reported this assault to the teacher and to the principal on the day when it happened. *Id*. ¶ 36. He was repeatedly taunted during this school year by other male students for having "man-boobs." *Id*. ¶ 41. He reported this harassment to a teacher and repeatedly to the principal. *Id*.

8. The plaintiff's son reported several incidents of verbal and physical harassment to the principal during the 2011-2012 school year, including two male students sexually assaulting him in a bathroom in February 2012, and three boys sexually assaulting him in a school bathroom in April 2012. *Id*. ¶¶ 53-65, 67-68.

9. In about early June 2012, the plaintiff's son refused to return to his Brunswick school. *Id*. ¶ 69. The school proposed a safety plan that made the plaintiff's son feel even less safe. *Id*. ¶¶ 70-71. On October 24, 2012, the plaintiff's son refused to meet with school staff to discuss the bullying. *Id*. ¶ 75. The plaintiff attended the meeting without her son but was told that her son needed to attend the meeting. When she told her son that he needed to attend a meeting

3

the next day at school, he had a panic attack. He then told his mother for the first time about the sexual assaults he had suffered at school in 2011 and 2012. He has not attended his Brunswick school since that date. *Id*. ¶¶ 76-77.

10.     The plaintiff reported the sexual assaults to Brunswick Junior High School on about October 25, 2012. *Id. ¶ 78.*

11.     The plaintiff's son was diagnosed with depression and post-traumatic stress disorder ("PTSD") as a result of assaults, abuse, and harassment that he suffered at his Brunswick school. *Id*. ¶ 82.

12.     The plaintiff filed a complaint against the defendants with the Maine Human Rights Commission ("MHRC") on July 30, 2012, alleging discrimination and retaliation against her son. *Id*. ¶ 84. The MHRC investigator assigned to this complaint concluded that the school allowed a hostile educational environment to persist for a lengthy period of time and that its response was not appropriate when it became clear that the harassment was continuing. *Id*. ¶ 89. The MHRC determined that there were reasonable grounds to believe that the school committed unlawful discrimination against the plaintiff's son for two and a half years. *Id*. ¶ 92.

13.     As a result of this conduct, the plaintiff and her son have suffered and are continuing to suffer, *inter alia*, emotional pain and distress, suffering, mental anguish, and loss of enjoyment of life. *Id*. ¶¶ 100 (Count I), 104 (Count II), 110 (Count III).

### III.   Discussion

The defendants seek the records of a therapist who treated the plaintiff's son from September 5, 2006, through November 17, 2010, and a counselor who has been seeing the plaintiff's son since January 2014, after he withdrew from his Brunswick school. Letter Brief dated March 25, 2016, from Melissa A. Hewey, Esq. to Honorable John H. Rich III ("Defendants'

Brief") at 2; Letter Brief dated March 25, 2016, from David G. Webbert, Esq. to Honorable John H. Rich III ("Plaintiffs' Brief") at 1.  The plaintiff has produced the medical records of her son's current treating psychiatrist, his pediatrician, and a psychologist who treated him between October 2012 and October 2013, as well as a neuropsychological evaluation by a licensed psychologist. Plaintiffs' Brief at 3.  She has invoked the psychotherapist-patient privilege as to the records at issue.

> The plaintiff has offered in lieu of production of these records to withdraw
>
> all of her claims for damages that might forfeit [the psychotherapist-patient] privilege.  Thus, she has offered—as a condition of preserving the psychotherapist-patient privilege regarding those records—that they will in return agree not to (1) pursue any damage claims for medically diagnosable (DSM) mental health conditions; (2) not rely on any medical or mental health experts or any medical or mental health records to prove damages; (3) not claim any damages based on hospitalizations or medical or mental health treatment; and (4) agree to limit their emotional distress claims to those emotional injuries arising as a fair consequence of the underlying claimed wrongful acts.

*Id*. at 4.  She adds that she "is willing to consider other limitations on the damage claims to avoid a judicial finding of forfeiture of the federal psychotherapist patient privilege regarding the counseling records in question." *Id*. at 5.

The defendants take the position, Defendants' Brief at 4,  that the emotional distress that gives rise to the plaintiffs' claims for damages is not of the kind characterized as "garden variety" emotional distress, the only type of claim for emotional distress that does not waive the psychotherapist-patient privilege. *Morrisette v. Kennebec Cty.,* No. Civ. 01-01-B-S, 2001 WL 969014, at *1 (D. Me. Aug. 21, 2001).

Both sides of this dispute cite *Stark v. Hartt Transp. Sys., Inc.*, No. 2:12-CV-195-NT, 2013 WL 358266 (D. Me. Jan. 28, 2013), in support of their respective positions.  There is no question that the records sought are relevant, the first consideration in *Stark*. *Id*. at *5.  The fourth

5

subsection of the plaintiffs' proffered limitation on their emotional distress claims is taken from language in *Morrisette* that is quoted in *Stark*. *Id*. at *9. However, *Stark* also quotes with approval the following language from *Willey v. Kirkpatrick*, No. 07-CV-6484CJS, 2011 WL 4368692, at *3 (W.D.N.Y. Sept. 19, 2011):

> Garden variety claims refer to claims for compensation for nothing more than the distress that any healthy, well-adjusted person would likely feel as a result of being so victimized; claims for serious distress refer to claims for the inducement or aggravation of a diagnosable dysfunction or equivalent injury.

2013 WL 358266 at *9.

That language is critical here, given the nature of the alleged torts and the emotional distress alleged to have resulted, particularly in the case of the plaintiff's son, who is alleged to have suffered depression and PTSD "as a result of" the alleged harassment and violation of his rights. In this case, it is readily apparent that the parties may have "very different notions of what could grow in the garden," *Flowers v. C.O. Owens # 1585*, 274 F.R.D. 218, 220 (N.D. Ill. 2011), "as a fair consequence of an underlying tort." *Morrisette*, 2001 WL 969014, at *2.

"Garden variety emotional damages are: the distress than any healthy, well-adjusted person would likely feel as a result of being so victimized[.]" *Flowers*, 274 F.R.D. at 225 (citation and internal punctuation omitted). They are "those feelings what would likely be experienced by anyone who experienced what the plaintiff alleges occurred[.]" *Id*. at 226.

In this case, on the facts alleged in the complaint, the plaintiff and her son may well have experienced emotional injuries that were, given their personal characteristics and pre-existing conditions, in excess of those that would be likely to have been experienced by "any healthy, well-adjusted person" who found himself in either plaintiff's alleged position. As discussed in the *Flowers* opinion, such heightened emotional injuries would exceed garden variety emotional damages. To the extent that the plaintiffs seek such damages at trial, the defendants' motion would

6

be granted. However, in reliance and on the strength of the limitations offered by the plaintiffs to their claims, the defendants' motion is conditionally denied.

### IV.    Conclusion

For the foregoing reasons, the motion to compel is **DENIED** upon the following specific conditions:

1. The plaintiffs do not pursue any claims for damages due to a medically diagnosable mental health condition.

2. The plaintiffs do not rely on any medical or mental health experts, providers, or records to prove damages.

3. The plaintiffs do not seek any damages based on hospitalizations or medical or mental health treatment or evaluation.

4. The plaintiffs do not seek damages for emotional distress beyond that which would likely be felt by any healthy, well-adjusted person as a result of the causes of action that they continue to allege after the date of this order.

If they choose not to abide by these limitations, the plaintiffs shall so inform the court and opposing counsel no later than 10 days from the date of this order, in which case the motion to compel will be deemed **GRANTED**.

### *NOTICE*

*In accordance with Federal Rule of Civil Procedure 72(a), a party may serve and file an objection to this order within fourteen (14) days after being served with a copy thereof.*

*Failure to file a timely objection shall constitute a waiver of the right to review by the district court and to any further appeal of this order.*

Dated this 29th day of April, 2016.

                                                    /s/ John H. Rich III
                                                    John H. Rich III
                                                    United States Magistrate Judge